UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

vs.  Case No.: 8:23-cr-388-TPB-CPT

MATTHEW FREDERIC BERGWALL,
    Defendant.
_____/

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE OR VARIANCE BASED ON EXTRAORDINARY PREPAYMENT OF RESTITUTION

Defendant Matthew Bergwall, by and through undersigned counsel, moves for a downward departure or variance based on his extraordinary prepayment of $1.5 million made to the Clerk's Office on March 17, 2025, as evidenced by the receipt attached as **Exhibit 1.**

$1.5 million is the top end of the Guidelines loss range in the final PSI report. The original PSI report listed the restitution amount due as $550,000, while the final PSI report lists the restitution amount due as undetermined. Under these circumstances, Matt Bergwall decided to prepay the top end of the Guidelines loss range as voluntary early prepayment of restitution.

### LEGAL BASIS

The Eleventh Circuit has held that "extraordinary restitution, whether paid before or after adjudication of guilt, may, in the unusual case, support a

1

departure from the guidelines." *United States v. Kim,* 364 F.3d 1235, 1238 (11th Cir. 2004). In addition, extraordinary restitution may also provide the basis for a variance from the Guideline range. *United States v. Pool,* 554 F.Supp.2d 1294, 1298 (N.D. Fla. 2008) (considering defendant's extraordinary restitution as both the basis for a departure from mandatory guidelines and a variance from advisory guidelines).

In this district, Judge Jung departed downward from an adjusted Guidelines range of 21-27 months to five years probation in a PPP loan fraud case based in large part on the defendant's extraordinary prepayment of restitution and forfeiture. *United States v. Joseph Abdo,* Case No. 8:22-cr-120-WFJ-UAM (August 21, 2023). Judge Jung's judgment is attached as **Exhibit 2** and the Abdo sentencing memorandum is attached as **Exhibit 3.** The details of Mr. Abdo's extraordinary restitution are outlined on pages 9-13 of **Exhibit 3.**

## THE *KIM* CASE

In *Kim*, the husband and wife defendants pled guilty to defrauding the WIC supplemental food program of $268,237 by using stolen WIC vouchers at their store. The two defendants paid the full restitution amount by the sentencing hearing after obtaining loans from family and friends in Korea and the United States and paying the $25,000 balance from their savings account. Mr. Kim received a downward departure from the guidelines range

of 15-27 months to five years probation including six months of home detention. Mrs. Kim received a downward departure from a guidelines range of 6-12 months to two years probation including four months of home detention. *Kim,* 364 F.3d at 1239. The Government appealed both sentences, but the Eleventh Circuit affirmed them both.

The *Kim* court held that "the proper inquiry" to determine whether a particular payment of restitution was extraordinary enough to warrant a downward departure was to examine "a wide range of factors, such as the degree of voluntariness, the efforts to which a defendant went to make restitution, the percentage of funds restored, the timing of the restitution, and whether the defendant's motive demonstrates sincere remorse and acceptance of responsibility." *Id.* at 1244. The *Kim* panel was "impressed at the lengths to which Appellees went in obtaining the money to make restitution", including by "dipp[ing] significantly into their life savings and voluntarily under[taking] an enormous amount of debt, to wit, almost $200,000." *Id.* at 1245.

## **FACTS**

Matt Bergwall is prepaying $1.5 million towards his restitution obligation using the entire proceeds of a personal loan from a business associate. As explained in detail in the Declaration of P. Christopher Wegner attached as **Exhibit 4**, this loan carries a high 10 percent annual interest rate and monthly interest payments of $12,500. It is secured by all of Mr.

3

Bergwall's private equity holdings. *Id.* The full principal amount of this loan becomes due in only two years with only a five-day grace period before default. *Id.*

In the opinion of Mr. Wegner, who drafted the promissory note, "this loan places [Mr. Bergwall] in an extremely challenging financial position for years to come" because its aggressive terms "will require him to work extraordinarily hard simply to keep up with the interest payments, let along eventually repay the principal." *Id.* Mr. Bergwall's "decision to accept these terms despite their severity demonstrates the depth of his remorse and commitment to making amends." *Id.*

## ARGUMENT

This early large prepayment of $1.5 million will either make Mr. Bergwall's victims completely whole or else go a very long way towards making them whole. Mr. Bergwall made this prepayment voluntarily before he was ordered to do so and as soon as he was able to do so.

Mr. Bergwall expended a great deal of personal effort over a long period of time in order to be able to make this large restitution prepayment. As attested to in the Wegner Declaration, Mr. Bergwall "routinely worked 60+ hour weeks across multiple business ventures simultaneously" in order to put himself in the position to be able to make this large early restitution

prepayment. *Id*. This required Mr. Bergwall to both "work[] multiple jobs" and "sacrifice[e] his personal time." *Id*.

Mr. Bergwall's decision to make this large voluntary restitution prepayment despite the onerous terms of this loan is the concrete demonstration of his sincere remorse and genuine acceptance of responsibility, as Mr. Wegner noted. Mr. Bergwall is going a long way towards making the victims whole at high risk to his own financial future because he believes that is the right thing to do and the best way he can make amends for his conduct.

Mr. Bergwall's actions parallel those taken by Mr. and Mrs. Kim and Joseph Abdo. Like the Kims and Mr. Abdo, Mr. Bergwall has really extended himself to secure funds to make substantial early restitution, working multiple consulting jobs and sacrificing his personal time. While the Kims borrowed almost $200,000, which the Eleventh Circuit characterized as "an enormous amount of debt", Mr. Bergwall has borrowed $1.5 million – more than seven times the size of the Kim's indebtedness. Finally, while the Kims had to travel to various relatives, including in Korea, to secure the loans needed for their restitution, here Mr. Bergwall had to work tirelessly in multiple business ventures to put himself in the position to obtain the loan proceeds he is using to make the victims whole as quickly as possible.

Matt Bergwall's actions in making this large restitution prepayment are very similar to those taken by the defendants in the *Kim* case and the *Abdo*

case. Accordingly, Mr. Bergwall deserves a downward departure for this reason that is analogous to the departures granted to the *Kim* defendants and to Joseph Abdo.

Dated: March 17, 2025                    Respectfully submitted:

                                                   */s/ Kevin Darken*
                                                **TODD FOSTER**
Florida Bar No.: 0325198
tfoster@tfosterlawgroup.com
**KEVIN DARKEN**
Florida Bar No.: 90956
kdarken@tfosterlawgroup.com
**TODD FOSTER LAW GROUP**
601 Bayshore Blvd., Suite 615
Tampa, FL 33606
Telephone: (813) 565-0600
*Attorneys for Matthew Bergwall*

6

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 17, 2025, I electronically filed the foregoing with the Clerk of Court by using the CMF/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Kevin Darken*
**KEVIN DARKEN**
