```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
_____
                                )
UNITED STATES OF AMERICA,        )
                                )
           Plaintiff,           )
                                )
v.                               )  Case No.:  8:23-CR-388
                                )
MATTHEW FREDERIC BERGWALL,       )
                                )
           Defendant.           )
_____)
```

**SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS P. BARBER**
**UNITED STATES DISTRICT JUDGE**

**July 10, 2025**
**10:03 a.m. to 10:31 a.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          CARLTON C. GAMMONS, ESQUIRE
                                Office of the United States Attorney
                                400 North Tampa Street
                                Suite 3200
                                Tampa, Florida 33602


**FOR THE DEFENDANT:**          KEVIN J. DARKEN, ESQUIRE
                                TODD A. FOSTER, ESQUIRE
                                Todd Foster Law Group
                                601 South Bayshore Boulevard
                                Suite 615
                                Tampa, Florida 33606


**ALSO PRESENT:**               MATTHEW FREDERIC BERGWALL, DEFENDANT

(Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.)

**REPORTED BY:**
Rebekah M. Lockwood, RDR, CRR
Official Court Reporter
(813) 301-5380 | r.lockwooduscr@gmail.com
P.O. Box 173496, Tampa, Florida 33672

```
 1              (Call to Order of the Court at 10:03 a.m.)

 2          THE COURT:  Morning, everybody.  Nice to see y'all

 3  again.  I think this is the third time we've had this case in

 4  court, but that's fine.

 5              This is the United States v. Matthew Bergwall, Case

 6  Number 23-CR-388.

 7              Go ahead and introduce yourselves, starting with the

 8  prosecutor.

 9          MR. GAMMONS:  Good morning, Your Honor.  Carlton

10  Gammons for the United States.

11          MR. DARKEN:  Kevin Darken and Todd Foster for Matt

12  Bergwall, who is next to me.

13          THE COURT:  Did you say Todd Foster, or did Kevin say

14  it for you?

15          MR. FOSTER:  He said it.

16          THE COURT:  Thank you.  It's okay to have a seat.

17  We've spent a lot of time on this case already.  Now is the

18  point where I'm going to just give the sentence and be done

19  with it, unless there's something else somebody feels they need

20  to say.

21              I think I said last time when we were in Court on

22  this case, pretty sure I said it, that this was the most paper

23  I have received in a criminal case ever.  And then since then,

24  I got even more.  All right.  Even more.  But it was helpful,

25  because it did give me -- got me up to speed on what happened
```

1    with the codefendants with Judge Covington and things like

2    that.  So I have read that.

3           Is there anything we need to talk about before -- I

4    don't want more argument on the same stuff we've already talked

5    about.  But if there's anything anybody wants to say or needs

6    to say, I'm happy to hear from you.  Otherwise, I'm ready to

7    move forward.

8           **MR. GAMMONS:**  Nothing from the United States, Your

9    Honor.

10          **MR. DARKEN:**  Your Honor, I just wanted to make a few

11   points about the other defendants' sentences relating to this

12   case, and then Mr. Bergwall wanted to update you on what he's

13   been doing since the March hearing.

14          **THE COURT:**  Okay.  Go ahead.

15          **MR. DARKEN:**  As to the --

16          **THE COURT:**  You can sit down, Kevin.  It's okay.

17          **MR. DARKEN:**  Thank you, Your Honor.  As to the

18   codefendants' sentencings, essentially, my view of what the

19   government's argument is, they're trying to put this Court in a

20   box where you've got Judge Covington imposing 21-month

21   sentences on these two defendants, and then you're kind of

22   stuck, because of this.

23          **THE COURT:**  I don't think I'm stuck.  Don't worry.  I

24   don't think I'm stuck.

25          **MR. DARKEN:**  I was worried, in part, because, as you

1    know, the architect of this, the person who began it, Haku, he

2    is not included in the government's analysis, and he got, as

3    you know, the probation sentence with adjudication withheld in

4    state court because he was a little bit under 18 at the time of

5    the offense.  Mr. Bergwall was a little bit over 18 at the time

6    of the offense, and so he is obviously an adult.  But we wanted

7    the Court to understand that as well.

8        In addition, as you know, Mr. Bergwall is different

9    from the two defendants Judge Covington sentenced.  He paid

10   $1.5 million.

11       **THE COURT:**  Yeah.  You said that in the brief.  I

12   read that.  I'm aware of that.

13       **MR. DARKEN:**  In addition, the other defendants didn't

14   raise any mental health issue, as we have in our pleadings, as

15   well.  So those were two major distinctions.

16       And, finally, it's no -- not throwing stones at the

17   other lawyers in those two cases, but they basically raised no

18   variance argument other than these are nice guys.  We've raised

19   multiple variance arguments in all of our pleadings, but in our

20   original sentencing memorandum, in particular, as well as in

21   the revised one.

22       So we don't want to be trapped by the fact that there

23   were potential arguments that could have been raised in front

24   of Judge Covington, which were not, and -- but we're now being

25   sentenced second after them, or third after them.

1  **THE COURT:**  I understand.  You like the sentencing

2  disparity argument when you're talking about the guy who was

3  sentenced to juvenile in Miami, because that goes for no

4  incarceration.  But you don't like it when it goes for the

5  other two who were sentenced in federal court to prison.  But

6  I'm not in a box by any of that.  I've got to take it into

7  consideration, but I'm not boxed in either way, on the low end

8  or the high end.  All right.  I get it.

9       What else you got?  Anything?

10  **MR. DARKEN:**  Well, you know, those are the major

11  arguments.  The arguments that we made in the original

12  sentencing memorandum, which we haven't really touched since

13  then.

14  **THE COURT:**  We don't need to retouch everything.  I

15  read it all last time.  I read what -- this latest round of

16  briefing.  I'm just saying, if there's something new or

17  something really, really important.  But we don't want to

18  repeat the whole thing.

19  **MR. DARKEN:**  Well, I guess what I'd like to do is

20  just have Mr. Bergwall talk to you directly about what he's

21  done since the first hearing in March when you talked about him

22  resetting his life.

23  **THE COURT:**  Sounds good.

24       (The defendant is sworn.)

25  **THE COURT:**  Go ahead.  You can sit.  Yeah.  Just

6

1    twist that mic.

2         **THE DEFENDANT:**  Your Honor, at my last hearing, your

3    words about the need for punishment, deterrence, and a complete

4    reset of my life have stayed with me.  You questioned my

5    motivations, and you were right to do so.  I've spent the

6    months since then reflecting on how I lost my way, and I've

7    come to understand the hard truth in your assessment.

8         My father was a man of integrity, who built his life

9    on the quiet dignity of his work and his love for our family.

10   When he died, he lost everything in an instant.  It has taken

11   me until now, standing before you, to realize that because of

12   my own actions, I'm now in a position where I could also lose

13   everything.  The profound difference is that he had no choice.

14        My situation is a direct consequence of my own

15   terrible decisions.  This realization has shown me how badly I

16   failed to appreciate the simple good life he cherished.

17   Instead of honoring his legacy, my life became a train, running

18   at a hundred miles an hour on the wrong track, driven by the

19   mistaken belief that status and financial success could define

20   my worth.

21        While doctors have explained how my manic state

22   contributed, I know it only amplified this flawed perspective

23   leading to choices that were not just illegal, but deeply

24   hurtful to the family he loved so much.

25        In Court, actions must speak louder than words.  You

instructed me to divest, and I have.  As detailed in the

memorandum, I've cut ties with my consulting work, and I've

removed myself from all operational control of my former

partnership.  My focus is no longer on business.  I have no

job, and my days are now spent rebuilding a foundation that has

nothing to do with financial gain.  You wanted me to find a

normal life, and I've realized that a normal life is a gift.

        I have begun to reconnect with my Christian faith,

not as a superficial gesture, but because I know I need a moral

compass stronger than my own ambition.

        In high school, as a leader of my youth group at the

First Congregational Church in Darien, my faith was a source of

strength, but I drifted away in the grief and confusion after

my father passed away.

        In recent months, I've been welcomed into a new

church community where I found mentors who are helping me

understand that true worth is not defined by net worth, but by

character and service to others.

        I've also been referred to the New Canaan Society, a

local Christian men's group focused on personal transformation,

and I plan to connect with them as soon as my sentence allows.

        My prayer is no longer for a specific outcome, but

for the humility to accept that whatever sentence you hand down

is part of God's plan for me, a necessary and just step on the

path to redemption.

1          I've repaired my saxophone, and I'm playing the old

2    jazz music I once loved.  I've started going to the gym.  I'm

3    continuing with my conversations with the Fordham professor

4    about sharing my story and, most importantly, about finishing

5    my degree.  These may seem like small things, but they are the

6    building blocks of an identity that isn't based on a business

7    deal.

8          Completing my education would be the ultimate reset,

9    allowing me to build a future on knowledge and discipline, not

10   the shortcuts of my past.  These are the things a normal

11   23-year-old does, and it is a path I'm committed to.

12         Losing the world of business and technology that I

13   once prized has been a profound consequence.  I accept this as

14   a necessary loss of the very things that fueled my worst

15   decisions and as the only path to my rehabilitation.

16         I recognize that I've been given specific skills, and

17   I hope that by stripping away the flawed motivations, this time

18   of reset will allow me to one day use those skills for good in

19   a way that helps others instead of causing harm.

20         I stand before you today not as a businessman or a

21   tech person, but as a young man who lost his way and is now

22   with humility and sincerity trying to find his way back.  I'm

23   ready to embrace the reset you spoke of and to undertake the

24   necessary hard work to prove that I am worthy of the Court's

25   trust.

1              Thank you.

2              **THE COURT:**  Okay.

3              **MR. DARKEN:**  Your Honor, there's one thing I forgot.

4              **THE COURT:**  Sure.

5              **MR. DARKEN:**  Which I think was clear in the amended

6  sentencing memorandum we filed on Monday.  I just want to make

7  it crystal clear that we are affirmatively seeking a home

8  detention sentence.  We're not seeking straight probation.

9  We're not seeking a probation only sentence.  I think the Court

10 believed that at the original sentencing in March of 2025, but

11 I just want to make that explicit.

12             **THE COURT:**  Okay.  I think we're all on the same

13 page.  And just for the record, we had a long sentencing on

14 March 20th, 2025.  A lot of stuff was given to me in advance,

15 which I looked at, including some videos from his sister and

16 others.  His mother spoke.  I see she's here again today.

17 Right?  And others spoke, and so that was all said.

18             It's an interesting case.  It's a very different

19 case.  We don't get very many cases like this.  That's for

20 sure.

21             We had another, we'll call it a status conference on

22 June 18th, 2025, when we talked some more about this.  And here

23 we are today, on July the 10th, 2025.  So a lot has been

24 written here.  A lot has been said here.  It's been well-done,

25 well explained by both sides.  And so I'm ready to move forward

UNITED STATES DISTRICT COURT

1    at this point.

2            At the end, after I give you the sentence, anybody

3    that wants to say anything or make any objections can do it at

4    that time.  All right?  Good?  Ready?

5            All right.  So question I have, this restitution

6    thing, he's paid it all back.  What should I say in his

7    sentence about restitution?  Should I say it the way they have

8    it written up here?  And then just go with the idea that, well,

9    it's all been paid and satisfied.  Should I make it part of his

10   sentence?  I mean, it says restitution of a million and some to

11   Amazon, 125 to Costco, 33 to Louis Vuitton, et cetera,

12   et cetera.  Should I say all this, and we just say it's

13   satisfied?

14           **THE PROBATION OFFICER:**  Yes, Your Honor.  So it can

15   go on the judgment, and the clerk can have record so they can

16   apply it appropriately.

17           **THE COURT:**  All right.  Very good.

18           **THE PROBATION OFFICER:**   Thank you.

19           **THE COURT:**  My next question is, there's a forfeiture

20   here.  What is that all about?  Is it his computers and phones

21   and stuff or --

22           **MR. DARKEN:**  It's the gross proceeds, Your Honor.

23           **THE COURT:**  Do I stick with the forfeiture also?

24           **MR. GAMMONS:**  Yes, Your Honor.  So at Docket

25   Entry 51, you entered an order of forfeiture.  We would just

1    ask you to make that part of the record.  As Mr. Darken

2    mentioned, it's the gross proceeds that Mr. Bergwall made as

3    part of this offense.

4              **THE COURT:**  So this doesn't -- I just say make it

5    part of the record and that covers that?  That's good?

6              **MR. GAMMONS:**  That's right, Your Honor.

7              **THE COURT:**  Okay.  You guys okay with that?

8              **MR. DARKEN:**  Yes, Your Honor.  We agreed to that

9    number in the plea agreement.

10             **THE COURT:**  Yeah.  I just don't know when somebody

11   pays it in advance and how all that -- how it all comes

12   together in forfeiture and stuff.  Sometimes they have the

13   forfeiture having something to do with the restitution.  And I

14   don't understand it all.  That's why I was just asking.  So

15   it's fine.

16             **MR. DARKEN:**  So just so the record is clear, he paid

17   $1.5 million.  There's a document in the Court file reflecting

18   that.  The restitution amount was roughly 1.462 million.  And

19   so the balance would be credited towards the restitution

20   amount -- towards the forfeiture amount.  And then he would owe

21   the remaining forfeiture balance.

22             **THE COURT:**  Yeah.  Okay.  Got it.  All right.

23             So just to say at the beginning on this thing,

24   Mr. Bergwall, this -- I feel pretty good about this case in

25   terms of this is not going to ruin your life.  I'm sure you've

12

1    been worried about it.  You should worry about it.  Some of

2    your buddies are in -- I don't know if they're in federal

3    prison right now.  But you're going to get through this.  It's

4    going to be just fine.  It's going to be a learning experience.

5    It's going to go with you the rest of your life.  But it's not

6    going to, you know, reduce you to, you know, living on the

7    streets and homeless in poverty and everything.

8            I think you're going to be able to accomplish most of

9    what you'd like to accomplish as an adult.  But you'll have to

10   do it a little differently, and you are going to have to have

11   some baggage, so to speak, because of this.  But I feel fine

12   that you're going to be a productive member of society at some

13   point when you get this all behind you.

14           So don't overthink it and, you know, come up with the

15   idea that, you know, your life is over.  It's not.  It's just

16   beginning.  It's just beginning.  So that's that point.

17           Next point, there's been a lot written here about the

18   Federal Sentencing Guidelines.  Eleventh Circuit tells us, and

19   I say it in almost every case, the Guideline are one of a dozen

20   factors the Court has to consider.  I am considering them as

21   one of a dozen factors.  The sentence I'm about to give is a

22   sentence I would have given irrespective of the sentencing

23   Guidelines, because it's a sentence I think is appropriate and

24   he deserves.

25           So that having been said, I'm going to start from the

1    back here.  At the end of this, if you want to appeal, you have

2    14 days to appeal.  If you can't afford a lawyer, you can get a

3    free lawyer, and the clerk will take your appeal for free, if

4    you don't have the money for an appeal.  But you've got to do

5    it within 14 days.

6            I'm accepting the plea agreement because I'm

7    satisfied it adequately reflects the seriousness of the actual

8    offense, and accepting the plea agreement will not undermine

9    the statutory purposes of sentencing.

10           Under the plea agreement, he's pled guilty to Count 2

11   in return for the dismissal of Count 1 and 3.  In accordance

12   with the plea agreement, it's ordered that Counts 1 and 3 are

13   dismissed.

14           There's a forfeiture order, which we just talked

15   about.  That's made part of the record here.

16           There's a hundred-dollar special assessment, which is

17   due immediately.

18           I'm not going to fine you in this case.

19           Restitution in the amount of 1,091,092.62 to Amazon;

20   125,068.56 to Costco; 33,113.01 to Louis Vuitton; 82,679.17 to

21   StockX; 92,087.68 to Apple; 1,411.98 to Best Buy; 35,179.65 to

22   Nike; and 1,839.25 to Nordstrom.

23           This restitution obligation is payable to the Clerk

24   of the U.S. District Court for distribution to victims.

25           While in Bureau of Prisons' custody, you shall either

UNITED STATES DISTRICT COURT

1  pay $25 quarterly if you have a nonUNICOR job, or pay at least

2  50 percent of your earnings if you have a UNICOR job.

3          Upon release from custody, you're ordered to begin

4  making payments of a thousand dollars per month.  This payment

5  schedule should continue until such time as the Court is

6  notified by the defendant, the victim, or -- victims or the

7  government that there's been a material change in the ability

8  to pay.  Although he's paid it all off, my understanding, so he

9  should get credit for all of that.

10          You have to give up DNA since you've been convicted

11  of a qualifying felony.

12          Now, you're going to have three years of supervised

13  release under the Middle terms -- standard terms in the Middle

14  District of Florida, which are explained in Section 5D1.3 of

15  the Federal Sentencing Guidelines.

16          You must participate in mental health treatment and

17  evaluation and any follow-up treatment, follow the probation

18  officer's instructions regarding that, and you must contribute

19  to the cost of that, if you have a financial ability to do so,

20  in the amount they will determine.

21          You are prohibited from incurring new credit charges,

22  opening additional lines of credit, or obligating yourself for

23  any major purchases without the approval of the probation

24  officer.  And you must provide the probation officer access to

25  all requested financial information.

UNITED STATES DISTRICT COURT

1          You must refrain from unlawful use of controlled

2   substances, submit to one drug test within 15 days of placement

3   on supervision, two periodic drug tests thereafter, as directed

4   by the probation officer.  You must submit to random drug tests

5   not to exceed 104 per year.

6          Paragraph 91 of your presentence report refers to

7   medical marijuana.  You have no medical marijuana ability

8   whatsoever.  This sentence trumps any legal ability to get

9   medical marijuana.  You're not allowed to have medical

10  marijuana.  Doesn't matter what any doctor in the world says,

11  I'm telling you no medical marijuana.  All right.

12         Let's see.  As I may have mentioned already, my

13  position -- or my duty is to give you the sentence which is

14  sufficient, but not greater than necessary, to comply with the

15  statutory purposes of sentencing.

16         And we get into the various statutory purposes of

17  sentencing, things like just punishment, respect for the law,

18  protect the public, rehabilitation, and to afford adequate

19  deterrence to criminal conduct.  I don't -- I have thought

20  about this a long time.  We talked about various options, about

21  getting Mr. Bergwall out of business, and off the computers,

22  and stuff like that, which he has recognized has been a problem

23  for him.  I thought about doing it that way.  In some ways,

24  that's a greater punishment than prison or anything like that.

25         On the other hand, in my opinion, based on everything

UNITED STATES DISTRICT COURT

1    I've seen here, some level of incarceration is necessary for

2    deterrence.  Not for him.  I don't think he's going to do

3    anything illegal.  But the rest of the world can't see a crime

4    like this take place and somebody gets house arrest.  I just

5    don't think that's sufficient to deter.

6            So the question is how much time behind bars?  I'm

7    taking into account the fact that he's paid this restitution

8    back, which is a major, major, major thing to me.  I'm also

9    taking into account his psychological issues, which are there

10   for sure, although not so serious that it keeps him from being

11   a productive member of society.  I'm also taking into account

12   he's genuinely remorseful, which I think he is.  He realized he

13   messed up.  There has to be a sentence that deters other

14   people.

15           After considering all of these different things, the

16   Sentencing Guidelines are just guidelines.  I'm going to

17   sentence him all the way down to a year and a day.  All right.

18   His sentence is a year and a day.  He will be designated

19   probably for this place they call club fed.  I don't know that

20   for a fact.

21           But you guys want to make some recommendations on

22   that in some way?

23           **MR. DARKEN:**  We would ask for FCI Otisville satellite

24   camp.

25           **THE COURT:**  I'll say that.  Again, BOP does whatever

UNITED STATES DISTRICT COURT

1    they want.

2           But the other two defendants got 21 months.  They're

3    also young people.  Judge Covington, you know -- maybe you

4    could say, you know, I'm a soft judge.  I don't think there's

5    very many people in the state prison or the federal prison that

6    would agree with that.  But I'm giving significantly less of a

7    sentence than Judge Covington gave the others.  I've explained

8    my reasoning for it.

9           So in terms of a voluntary surrender, I mean, I'll do

10   two weeks on this.  But, I mean, he could have been going to

11   jail on the 20th of March.  He got another month out of this

12   when I had to reschedule it for my own reasons, because we were

13   supposed to have court -- I guess it was June 18th we were

14   supposed to have court.  I misspoke earlier when I said we had

15   our other hearing on June 18th.  We didn't.  It was another

16   date.  But two weeks is fine.  He needs to voluntarily

17   surrender in two weeks.

18           Anybody have any questions?

19       **MR. DARKEN:**  I guess the question would just be, if

20   he is not designated within the two-week period, he just

21   reports to the marshal here?

22       **THE COURT:**  Yeah.  That's fine.  I think he will be,

23   though.  Is that how you want to do it?

24       **THE PROBATION OFFICER:**  He should be, Your Honor, but

25   that is correct.

18

1          **THE COURT:**  And by the way, just so everyone

2    understands, we have interns here.  A year and a day sentence

3    isn't even a year and a day.

4          Mr. Gammons, you should be objecting to this.

5    Object.  I'm not telling you -- if you don't want to, you don't

6    have to.

7          But the other two guys got 21 months.  A year and a

8    day is less than a year and a day.  I don't know how it's

9    calculated.  But it's not as long as it sounds.

10          But you've got to spend some time behind bars on this

11    thing, Mr. Bergwall, so the rest of the world sees if they do

12    something like this, you know, something bad is going to

13    happen.

14          All right.  Anybody want to say anything else?

15          **MR. FOSTER:**  If I may, sir, since he's already paid

16    the restitution, are the limitations that you imposed on

17    opening new bank accounts and incurring credit-card charges

18    necessary?

19          **THE COURT:**  Yes.  What I said -- notice what I did.

20    I didn't do any of the more restrictive things we talked about.

21    So he can do whatever business he wants to do.  All those

22    things I was thinking of, I did not make part of the sentence.

23          Really, what I said was, he's got to run by what he

24    wants to do to probation.  I didn't say he couldn't.  It's

25    just -- it's not that you can't.  It's just that you have to

```
 1    let them know what you're doing.
 2            I mean, I'll say it again.  Prohibited from incurring
 3    new credit charges, opening additional lines of credit, or
 4    obligating yourself for any major purchases without the
 5    approval of the probation officer.
 6            So, really, he can do the businesses he wants to do,
 7    as long as, you know, they approve it and think it's
 8    legitimate.  All right.  I just decided not to go that route at
 9    all and just do some time behind bars.  And go forth and
10    prosper, legally.
11            Okay?  Any other questions?
12            MR. GAMMONS:  No questions from the United States,
13    Your Honor.
14            MR. FOSTER:  Thank you.  No.
15            THE COURT:  Don't ask for more time on this.  You
16    could have been going to jail in March.  All right.  So just
17    get it over with.  When you get out, you're a free man.  You
18    can start your life and be successful.  Good luck.
19            MR. FOSTER:  May I ask one other question, sir?
20            THE COURT:  Yes.
21            MR. FOSTER:  Assuming he is not designated within two
22    weeks, that means they will put him in the Pinellas County
23    Jail, and then he'll be on the transport circuit to wherever he
24    goes.  May we apply back to the Court --
25            THE COURT:  Let me know, but I think he'll be okay.
```

 1              **MR. FOSTER:**  In my experience, it takes longer than

 2   two weeks.

 3              **THE COURT:**  We'll see.

 4              **MR. FOSTER:**  We'll see.  So if it doesn't, may we

 5   apply for a two-week extension?

 6              **THE COURT:**  You can let me know, yeah, sure,

 7   absolutely.

 8              **MR. DARKEN:**  Your Honor, Mr. Bergwall had a question,

 9   which was, if he had to report to the marshal because he wasn't

10   designated yet, could he do it in Connecticut where he's --

11   will be living?

12              **THE COURT:**  You can talk to them about it.  Talk to

13   them about it.  They'll answer your questions about how all

14   that works, because I don't know.  I don't know.  Okay?

15              **MR. FOSTER:**  Yes, sir.

16              **THE COURT:**  Thank you.

17              **MR. FOSTER:**  Thank you, sir.

18              **THE COURT:**  Take care.

19         (Discussion off the record.)

20              **THE COURT:**  We're going to go back on the record.

21   Thank you for saying this.  Our friends in Atlanta, they love

22   to read these transcripts and come up with these things.

23              I've said many times, anybody have anything else to

24   say, and nobody has anything else to say.  They read a

25   transcript, and they say, aha, we're going to reverse this

1    because the judge didn't give the people an opportunity to

2    object.  When I say, if you have anything else to say,

3    objection would be something you would have to say.

4            So I'll say it, does anyone have any objections

5    they'd like to note?

6            **MR. GAMMONS:**  There are no objections to the sentence

7    or the manner in which it was imposed from the United States.

8            **MR. FOSTER:**  As well.  And no additional objections

9    as a result of today's proceedings.

10           **THE COURT:**  But whose idea was this for me to come

11   out and say this?  Carlton?  You're right.  Because they send

12   these things back, and it's like it's a mystery.  I think I say

13   it the right way.

14           **MR. FOSTER:**  Sonya gets credit, too.

15           **THE COURT:**  Yeah.  Thank you.

16           **MR. GAMMONS:**  Thank you, Your Honor.

17       (Proceedings adjourned at 10:31 a.m.)

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    **CERTIFICATE OF REPORTER**

2    STATE OF FLORIDA

3    COUNTY OF HILLSBOROUGH

4              I, Rebekah M. Lockwood, RDR, CRR, do hereby certify

5    that I was authorized to and did stenographically report the

6    foregoing proceedings; and that the foregoing pages constitute

7    a true and complete computer-aided transcription of my original

8    stenographic notes to the best of my knowledge, skill, and

9    ability.

10       I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a relative

12   or employee of any of the parties' attorneys or counsel

13   connected with the action, nor am I financially interested in

14   the action.

15       IN WITNESS WHEREOF, I have hereunto set my hand at Tampa,

16   Hillsborough County, Florida, this 11th day of August 2025.

17

18

19

20

21   REBEKAH M. LOCKWOOD, RDR, CRR
     Official Court Reporter
22   United States District Court
     Middle District of Florida

23

24

25